[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO STRIKE
CT Page 8880
The defendant brings this action in seven counts arising out of his dismissal of employment by the plaintiff. The allegations are set forth in the revised counts of November 22, 1999. The defendant moves to strike each of the counts on the basis that the plaintiff has failed to adequately plead the causes of action sought to be set forth in each of the counts.
The following facts are pleaded to support what the plaintiff claims is an adequate factual basis to support the claims for relief as pertains to the counts. The plaintiff claims that the plaintiff was employed by the defendant. On or about March 4, 1997, in the course of his employment, the plaintiff was provided with a document entitled "Company Rules and Safety Regulations". It is claimed that the document provides, in part, that "no discretionary action, other than a warning, will be imposed without prior consultation (except for those instances warranting immediate discharge)." That paragraph also states that "The document enumerates certain instances of misconduct which may result in immediate discharge, as well as other instances of misconduct which can result in discipline." The plaintiff further claims that he was terminated from his position on our about February 10, 1999, telling him that he had quit his position, even though the plaintiff had not quit his position. He also claims that he was terminated for no reason warranting immediate discharge and/or terminated without consultation.
Additional claims will be discussed as pertains to counts four through seven.
 I
A brief review of general rules pertaining to pleadings is appropriate. Section 10-2 of the Practice Book, captioned "Pleading Legal Effect" provides that acts and contracts may be stated according to their legal effect, but in so doing the pleading should be such as to apprise the adverse party of the state of facts which it is intended to prove. It is of course elementary that a contract is a legal conclusion which arises from the facts arising out of the underlying factors which result in the legal conclusion of "contract".
 II First and Second Count
The plaintiff has alleged in the first count that there was an express contract which limited the defendant's right to terminate his CT Page 8881 employment. The plaintiff however has failed to allege any facts to support a conclusion that there was an express contract of employment between the plaintiff and the defendant. Although it is possible that an employer handbook, given to the employee at or prior to employment might, under certain circumstances, form the basis for an express contract — an expressed offer by the employer and an expressed acceptance by the employee — that is not the circumstances here pleaded. The law of contract is still applicable as concerns express contracts. See Torosyanv. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13, 14
(1995).
"As a general rule contracts of permanent employment, or for an indefinite term are terminable at will". Torosyan, supra, p. 14.
In the instant case the plaintiff has pleaded no facts to support a conclusion that the plaintiff and the defendant had at any time bargained for an agreement as claimed by the plaintiff that "no disciplinary action, other than a warning, would be imposed without prior consultation ("except for those instances warranting immediate discharge)." The complaint's, first count, also alleges that "the document enumerates certain instances of misconduct which may result in immediate I discharge, as well as other instances of misconduct which can result in discipline." The complaint further alleges that the defendant claimed that he had quit his job, when in fact he was "terminated without prior consultation and for no reason warranting immediate discharge."
It is not claimed that the plaintiff was furnished ""the company rules and safety regulations" document, prior to the commencement of employment. It is not claimed in the complaint that there was any discussion between employee plaintiff and employer defendant prior to, at, or subsequent to furnishing of the document. It is not claimed in the complaint that the document was in substitution of any prior employment document upon which the plaintiff had previously relied.
"...we note that all employer-employee contracts not governed by express contracts involve some type of implied contract of employment.... (implied contract of employment is a unilateralcontract)". Torosyan, supra, p. 13. This means, of course, that when the employee works he gets paid whatever benefits accrue to him from the employment. However, since employment is usually terminable at will of either party, there is usually no promise by either party of continuous employment.
As aforesaid, an employee has no common law right to continuous employment, absent certain factual circumstances not specifically pleaded in the first or the second count. However, our Supreme Court has CT Page 8882 superimposed upon the Common Law a circumstance which presumptively gives to the employee such benefits as are set forth in the issuance by the employer of a new employment manual. "When an employer issues an employment manual that confers on an employee greater rights than he or she previously had, the employee's continued work for the employer thereafter ordinarily demonstrates that the employee has accepted that offer of new rights." Torosyan, supra, p. 18.
However, where the manual diminishes the rights of the employee continued employment does not appear to presumptively work to the disadvantage of the employee. "When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment, however, the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms."
Torosyan, supra, p. 18.
There appears to be some lack of precision as to whether the furnishing of the employment manual converts the unilateral contract into an express common law contract of future employment, or, conversely, that the inclusion of this limitation upon discharge creates an "implied contract". See Finley v. Aetna Life Casualty Co., 202 Conn. 190, 199
(1987) in dealing with an initial personnel manual, (express contract), with similar circumstances by categorization as an implied contract.Coelho v. Posi-Seal International. Inc., 208 Conn. 106-112 (1988). This also appears to be the proper category, per Torosyan, supra, p. 13.
Whichever category the law places such conferring of rights appears to be a distinction without a difference. "Contractual duty is imposed by reason of a promissary expression. As to this, there is no difference between an express contract and an implied contract; all contracts are express contracts." Corbin On Contracts, Volume 1, Section 18, Express and Implied Contracts, 1252. (The distinction between express and implied contracts appears to be a lack of specific verbal or written consent by the promisee, here the employee, in the latter case.)
It is clear that there is a factual difference between a set of circumstances whereby employer and employee actually bargain for rights, as compared to the operation of law set forth in Torosyan, supra, arising out of the unrequested furnishing of the employment manual. The plaintiff should make it clear concerning the first count, as to whether he is relying upon the post employment furnishing of the manual or, conversely, whether other facts are claimed, and if so what they are, as concerns the formation of a bilateral express contract. Practice Book Section 10-2. The defendant is given by this court the right to plead out CT Page 8883 of order to file a request to revise if it so chooses, to comport with P.B. § 10-2.
For the reasons set forth herein, the motion to strike the first count and the motion to strike the second count are denied.
 III Third Count
The defendant moves to strike the third count of the complaint which alleges a breach of the covenant of good faith and fair dealing. "... in every contract there is an implied covenant of good faith and fair dealing." See Magnan v. Anaconda Industries. Inc., 193 Conn. 556, 558
(1984); Carbone v. Atlantic Ridgefield Co., 204 Conn. 460, 471 (1987).
The plaintiff has alleged, in counts one and two that he had contract rights which precluded his termination without cause. If that be eventually proven then this count is properly pleaded.
The motion to strike the third count is denied.
 IV Fourth Count
The defendant moves to strike the fourth count, promissory estoppel.
The plaintiff here pleads that the defendant made certain promises concerning these matters which constitute grounds for discipline and immediate discharge. He claims that none of his conduct warranted discharge under any of the criteria set forth in the manual. Rather he claims that he was discharged for none of the reasons for discharge set forth in the manual but rather for the pretextual reason that "he had quit his position".
"This court has recognized, however, the development of liability in contract for action induced by reliance upon a promise despite the absence of common-law consideration normally required to bind a promissor. . . A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promissee could reasonably have expected to induce reliance." D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, 202 Conn. 206, 213 (1987). The representation must be promissory and definite.
It follows that promissory estoppel does not exist where there is an CT Page 8884 actual contract setting forth that promise. Although the remedy is allied to the philosophy of contracts it exists in the absence of common law consideration which would bind the "promises" in common law contract.
The plaintiffs claim in this fourth count is that he was discharged for reasons outside of those given in the "Company Rules and Safety Regulations." Although not specified in the fourth count the plaintiff alleges that he was discharged for representing to the defendant that co-workers, and his immediate supervisors, were collecting pay from the defendant for time that they were not actually working.
It is difficult to conceive that the reporting of this information to the defendant would be such as to fall within the concept of "misconduct warranting immediate discharge," or that the plaintiff would even imagine that such reporting would constitute misconduct or that he would not be completely at liberty to report such conduct.
The plaintiff is at liberty to plead in the alternative, as to the first and second count, and alternatively the fourth count.
The motion to strike the fourth count is denied.
 V
Fifth Count
The defendant moves to strike the fifth count, termination in violation of Public Policy.
"Public Policy imposes some limits on unbridled discretion to terminate the employment of someone hired at will." Sheets v. Teddy's FrostedFoods. Inc., 179 Conn. 471, 476 (1980). It is without question that criminal statutes prohibiting larceny and embezzlement reflect the public policy of this state. Fraud and forgery also reflect such policy. Retaliatory discharge under the circumstances alleged is sufficient to allege a claim for wrongful termination.
 VI Sixth Count
The plaintiff alleges that he was discharged in violation of General Statutes § 31-51q for exercising his right to free speech under thefirst amendment to the United States Constitution. The right to free speech alleged is the right to report thefts from the employer. The question posed by the motion involve a determination as to whether these CT Page 8885 are matters of public concern. This presents a mixed question of fact and law which cannot be resolved by the motion to strike. Daley v. Aetna Life Cas. Co., 249 Conn. 766, 777 (1999).
The motion to strike the sixth count of the complaint is denied.
 VII Seventh Count
The plaintiff claims in this seventh count of the complaint, damages for intentional infliction of emotional distress. This, it is claimed, was caused by the defendant fabricating a claim that he had quit his employment.
The defendant's conduct must result from an intent to inflect emotional distress, or know it was likely to result; it caused the plaintiffs distress; it was extreme and outrageous conduct; the emotional distress was severe. Peytan v. Ellis, 200 Conn. 243, 253 (1986).
These criteria involve questions of fact which are to be determined by the trier of fact. The specifics of the claim can be revealed by discovery and deposition.
The motion to strike the seventh count of the complaint is denied.
 VIII Negligent Infliction of Emotional Distress
A fabrication of the claim that the plaintiff had quit his job, rather than to have conducted an inquiry as to the reason for his departure, appears to be a proper claim of failure to act as a reasonable man (employer), or acting in a fashion that a reasonable person would not act, meets the classic definition of negligence. Discharging the employee without making a sufficient inquiry as to whether other employees, as reported, were engaged in theft from the employer, appears to be alleged unreasonable conduct by the employer. Both of these claims raise questions of fact as to whether such conduct, if proven, was unreasonable.
The motion to strike the eight count of the complaint is denied.
 ___________________, J. L. Paul Sullivan
CT Page 8886